Plaintiff returned to work for defendants following arm and hand problems on May 28, 1991. On June 21, she was seen by her physician, Dr. Paul, for a "new problem" in her shoulder. Dr. Paul recorded that she reported having pain in the shoulder since returning to work, which the testimony of Nurse Knott tended to confirm. Dr. Paul determined that her job caused her to move her arm through the "90 degree" angle, i.e., straight out from her shoulder, which puts stress on the rotator cuff, particularly for those, like Ms. Moseley, whose congenital bone position in the shoulder tends to subject it to unusual stress. He was concerned that plaintiff should not do a job that required such motions on "repetitive" basis. (Depo. of Dr. Paul, pps. 6, 9, 13-15, 25, 27-28.) In light of the fact that the movements were made in 3-5 minute task cycles, with little shoulder motion, and little force or weight involved, the finding that plaintiff was not put at "increased risk" by the job was correct. Plaintiff testified at hearing — and her counsel's brief argued — that on June 21, 1991 (the day her shoulder was first evaluated by Dr. Paul), she sustained an injury by accident due to weight on her arm while it was extended, and that her shoulder pains began on that day. In response to a hypothetical question, Dr. Paul stated that the shoulder probably was injured by such an accident — rather than gradual wearing — if it wasassumed that plaintiff had no shoulder pain prior to such anevent. However, the greater weight of the evidence does not support a finding that such an injury occurred on that date, or that her disability resulted from an accident, rather than the gradual wearing process initially suspected by Dr. Paul.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. Transportation Insurance Company was the carrier on the risk.
4. Plaintiff's last date of work for defendant employer was July 12, 1991.
5. Plaintiff was employed by defendant employer beginning October 10, 1988. She was out on medical leave from October 15, 1989 through March 25, 1990, from June 5, 1990 through October 30, 1990, and from October 8, 1990 through May 27, 1991.
In addition, the parties stipulated into evidence the following:
1. Portions of the transcript of evidence taken in IC# 973125.
2. Packet of records from the Employment Security Commission.
3. Answers and supplemental answers to interrogatories.
4. Plaintiff's exhibit's 1, 2, 4, 5, and 6 from IC# 973125.
5. Forms 18 dated July 16, 1992 and September 20, 1991.
6. Form 19 dated August 17, 1992.
7. Form 19 dated October 30, 1991.
8. Form 33 dated May 23, 1994.
9. Form 33R dated June 2, 1994.
In addition, the parties submitted written stipulations dated October 3, 1995 which are incorporated by reference.
* * * * * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission makes the following
FINDINGS OF FACT
1. In October 1988 plaintiff began working for defendant employer, a company which manufactured steering gears for motor vehicles. During the next two year she worked in various capacities in the assembly process, but she missed work for periods of time due problems with her hands and arms. From November 1990 until May 1991 she was out of work under the care of Dr. Paul, an orthopedic surgeon. She returned to work on May 28, 1991.
2. Upon returning to work, plaintiff was assigned the job of assembling the side arm sections of the gears. She worked at a table and would place a side arm on a stand. Then she attached clamps, applied oil, placed a "boot" on it which she would clamp into place, and put on a nut and a vertical piece which she turned to tighten. After these pieces were assembled, she would clamp the side arm to the table and use a torque wrench to tighten the nut. It took three to four minutes to complete the process.
3. The parts plaintiff used in this job were located in boxes which were kept in a crate. During her shift she would periodically have to go get a new box of parts. The boxes weighed approximately twenty-one pounds.
4. Plaintiff worked in the side arm position through June 1991. During this time she continued to complain of problems with her hands and arms.
5. On an unknown date in June 1991, plaintiff noticed right shoulder pain after she had lifted several boxes of parts. She alleges that one of the boxes she lifted began to break open at the bottom so that she grabbed it and immediately experienced a sharp pain in her shoulder, and that this event was the origin of her shoulder problem. However, based upon the evaluation of the testimony by the hearing Deputy, her allegation is not accepted as credible. She did not report such an injury to her supervisor, to the plant nurse or to Dr. Paul, whom she saw on June 21. In fact, she did not report a work related shoulder problem to her employer until several months later. During this time she had a pending worker's compensation claim for her hand and arm problems and knew that she was supposed to report an injury on the date it occurred.
6. Plaintiff developed right shoulder pain on the date in question while performing her normal job duties in her customary manner. There was nothing unusual or out of the ordinary in the way that she lifted the boxes on this occasion, nor was there an interruption of her regular work routine.
7. In the alternative, plaintiff has claimed that she developed an occupational disease. Her condition was diagnosed by Dr. Paul as a partial rotator cuff tear with tendonitis and impingement of the right shoulder. The MRI performed in August revealed that she had a downward sloping acromion. This is a congenital condition which predisposed her to rotator cuff problems. Dr. Paul's diagnosis was confirmed in June 1992 when Dr. Poehling performed arthroscopic surgery to repair the joint.
8. Plaintiff's job in side arm assembly required constant use of her hands, but was not shown to involve the type of frequent, repetitive shoulder movements associated with rotator cuff problems. Consequently, she did not prove that she was placed at an increased risk of developing rotator cuff problems by reason of her job duties as a side arm assembler as compared to the general public not so employed. Nor did she prove that her job duties were a significant contributing factor in the development of her right shoulder condition.
9. Plaintiff has not proven that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment and which was not an ordinary disease of life to which the general public was equally exposed.
10. Plaintiff ceased working for the employer on July 12, 1992, and thereafter received unemployment benefits and benefits under a private sickness and accident plan wholly funded by the employer.
* * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer on the date in June 1991 when she experienced right shoulder pain at work. N.C. Gen Stat. § 97-2(6); Anderson v. Northwestern MotorCompany, 233 N.C. 372, 64 S.E.2d 265 (1951).
2. Plaintiff's right shoulder condition was not an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-53 (13); Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979); N.C. Gen. Stat. § 97-2(6); Anderson v.Northwestern Motor Company, 233 N.C. 372, 376, 64 S.E.2d 265
(1951).
3. Plaintiff is not entitled to benefits under the Workers' Compensation Act for her rotator cuff problems. N.C. Gen. Stat. § 97-2 et seq.
* * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. This claim is hereby DENIED.
2. Each side shall pay its own costs.
 S/ __________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ __________________ COY M. VANCE COMMISSIONER
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
JRW:md